

**FILED**

AUG 08 2018

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 08-CR-334 (RCL) |
| ) | |
| CHARLES E. COUGHLIN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is defendant Charles E. Coughlin's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [ECF Nos. 206 and 221], as well as his Motion to Expand the Record Pursuant to Rule of the Federal Rules Governing 28 US § 2255 Proceedings. Defendant claims that his counsel was ineffective. Upon consideration of defendant's motion [206 and 221], the Government's opposition [241], defendant's reply [247], the entire record herein, and the applicable law, the defendant's motion is **DENIED**.

I. **BACKGROUND**

A. **Defendant's Victim Compensation Fund Claim**

Defendant Charles Coughlin was working at the Pentagon on September 11, 2001. *United States v. Coughlin*, 821 F. Supp. 2d 35, 38 (D.D.C. 2011). Defendant's desk was located seventy-five feet from the site of impact of the hijacked airplane that crashed into the building that day. *Id.* In December 2003, Defendant submitted a claim to the September 11th Victim Compensation Fund ("VCF"), which Congress created to compensate individuals injured on September 11th. *Id.* He claimed that the plane's impact caused the ceiling overhead to cave in. *Id.* He also stated that he was struck by flying debris, and hit his head while engaged in the rescue effort. *Id.* In his submission to the VCF, he stated that this sequence of events caused him severe and permanent

1

disabilities. *Id.* He argued that his collection of disabilities prevented him from participating in athletic activity, and the medical attention that they required forced him to take time off from work. *Id.* He also claimed that he was unable to complete routine household chores and was forced to pay others to complete them. *Id.* In his VCF claim, he included a collection of ten checks that were used to compensate others for such work. *Id.* The claim, however, only sought $180,000 in compensation for his injuries and disabilities, and no compensation for the replacement services that he procured and other economic damages related to the injuries which he described. *Id.*

The VCF initially denied defendant's claim due to its untimeliness. *Id.* at 38-39. Defendant appealed that determination on February 17, 2004, explaining his untimeliness and seeking a waiver of ineligibility that was available to rescue workers. *Id.* at 39. Defendant submitted additional documentation to support his appeal on February 20 and March 9, 2004, including medical records and a physician's report. *Id.* The VCF reversed its initial denial and notified the defendant that he was eligible for a presumed award of $60,000 for noneconomic loss. *Id.* The VCF notified defendant that he could either accept the presumed award or request an appeal hearing. *Id.* On April 30, 2004, defendant's attorney notified the VCF of his client's request for an appeal hearing. *Id.*

During the May 13, 2004 appeal hearing, defendant's attorney told the hearing officer that he requested the appeal hearing because the presumed award was "unfair and inadequate" and "provided no compensation for economic loss" to defendant. *Id.* (internal quotations omitted). Defendant elaborated by stating that his initial claim lacked a past, present, and future loss of earnings component. *Id.* Defendant submitted ten additional exhibits to support his appeal, nine of which centered on his economic-loss claim. *Id.* These nine exhibits included a letter detailing the time he had taken off from work for doctor's appointments and physical therapy; thirty two carbon

2

copies of checks purportedly reflecting payments to outsiders for household services that he was no longer able to perform; and a six-part schedule detailing his past and future economic claims. *Id.*

On June 1, 2004, the VCF returned its final decision, awarding defendant $331,034: $151,034 for economic damages, as well as the $180,000 that he sought for noneconomic damages for his injury. *Id.*

### B. First Trial

On October 31, 2008, a D.C. grand jury indicted defendant on five counts of mail fraud (one for each letter he sent to the VCF while pursuing his claim), one count of filing a false, fictitious and fraudulent claim, and one count of theft of government property. *Id.*

On March 10, 2009, trial proceedings commenced against the defendant with Judge Kennedy presiding. *Id.* During the trial, the government contested defendant's allegation that he was injured on September 11, 2001. ECF No. 241 at 5. In response, the defense presented the expert testimony of Doctors Spiro Antoniades, Akhil Khanna, and Thom Mayer, all of whom testified that defendant sustained a partial permanent disability during the attack on the Pentagon. ECF No. 206 at 8-9; ECF No. 221 at 8. These experts testified that defendant was being treated for a cervical spine injury following September 11, 2001. ECF No. 206 at 8-9; ECF No. 221 at 19. Ultimately, the jury acquitted the defendant of three counts of mail fraud (Counts Two, Three, and Five), but failed to reach a verdict on the other two mail fraud counts (Counts One and Four), the count of filing a false, fictitious and fraudulent claim (Count Six), and the count of theft of government property (Count Seven). *Coughlin*, 821 F. Supp.2d at 39.

### C. Second Trial

Defendant's retrial commenced on June 8, 2009, despite defendant's objection that retrying the hung counts was barred under the Double Jeopardy Clause, in light of *Yeager v. United States*. *Coughlin*, 821 F. Supp.2d at 40; 557 U.S. 110 (2009). Defendant sought an interlocutory appeal of the Court's denial of his objection to the retrial. *Coughlin*, 821 F. Supp.2d at 39-40. After the Court denied his interlocutory appeal, defendant sought an emergency stay from the D.C. Circuit, which was granted. *Id.* at 40. Judge Kennedy ultimately declared a mistrial. *Id.*

### D. D.C. Circuit Decision

On June 29, 2010, the D.C. Circuit reversed Judge Kennedy's decision to allow the government to retry defendant on the two remaining mail fraud counts, but affirmed his decision to allow for a retrial of the false claim and theft counts. *United States v. Coughlin*, 610 F.3d 89 (D.C. Cir. 2010).

### E. Third Trial

On February 2, 2011, defendant's case was reassigned by the parties' consent to this Court. *United States v. Coughlin*, 527 Fed. Appx. 3, 5 (D.C. Cir. 2013). On July 6, 2011, this Court issued a memorandum opinion outlining evidentiary rulings for the third trial. ECF No. 141. Of most relevance to defendant's § 2255 motion, this Court determined that medical and athletic-activity evidence would be admissible at defendant's third trial. ECF No. 241 at 6. The prosecution, in its own words, presented a "narrower scheme-to-defraud theory, conceding that defendant was injured on 9/11 but contending that he submitted a false claim for economic damages." *Id.* This theory centered largely on the misrepresentations that defendant made to the VCF during his May 2004 appeal hearing. *Id.* Specifically, the prosecution sought to demonstrate the degree to which defendant had exaggerated the severity of the injury that he sustained on September 11, 2001 in

order to increase his economic damages. *Id.* at 16. Additionally, the prosecution focused on the misrepresentations that defendant made when attempting to demonstrate the costs of replacement services paid to outsiders as a result of his injuries. *Id.* On August 29, 2011, the jury convicted defendant on the false claim and theft of government property counts. *Coughlin*, 527 Fed. Appx. at 5. Defendant appealed his convictions, arguing that this Court erred by (1) allowing for the government to present evidence that predated his request for a VCF appeal hearing on April 30, 2004, and (2) treating evidence of medical records and athletic activity prior to April 30, 2004 as "intrinsic." *Coughlin*, 527 Fed. Appx. at 6 (internal quotations omitted). The Court of Appeals affirmed this Court's decision on June 14, 2013. *Id.* The Supreme Court denied his petition for a writ of certiorari on December 6, 2013. *United States v. Coughlin*, 527 Fed. Appx. 3, *cert. denied*, 134 S. Ct. 833 (Dec. 16, 2013).

**F. Post-Trial Motions**

Defendant filed a Motion to Vacate under 28 U.S.C. § 2255 on December 16, 2014, alleging that his trial counsel was constitutionally ineffective for failing to present expert medical testimony during his third trial. ECF Nos. 204, 206. On December 18, 2014, this Court ordered the Government to respond to defendant's Motion to Vacate. ECF No. 207. On January 30, 2015, the government filed a motion for extension of time to respond to defendant's motion. ECF No. 212. Also on January 30, 2015, the government filed a motion for an order finding a waiver of attorney-client privilege with respect to the claims of ineffective assistance of counsel raised by defendant in his Motion to Vacate, Set Aside, or Correct Sentence. ECF No. 211. This Court granted the government's motion for an extension, as well as its motion for a finding of waiver of the attorney-client privilege. ECF Nos. 213, 214.

On April 4 and May 18, 2016, defendant filed, *pro se*, amended 28 U.S.C. § 2255 motions alleging that his trial counsel, John Bourgeois, was constitutionally ineffective for, among several other things, not presenting expert medical testimony at his third trial. ECF Nos. 217, 221. This Court ultimately deemed those motions to be motions for leave to amend his prior § 2255 motions. ECF No. 226 The government opposed all of the amended issues proposed in defendant's motions except for his claim that his trial counsel was ineffective for not requesting CJA funds and presenting expert medical testimony. ECF No. 227. This Court ultimately granted defendant's motion for leave to amend his motion only as to this same issue. ECF No. 233. On December 11, 2017, defendant filed a Motion to Expand the Record Pursuant to Rule 7 of the Federal Rules Governing 28 USC § 2255 proceedings, seeking consideration of trial transcripts from the first and second trial, as well as an additional 311 pages of material. ECF No. 246. The government posed no objection to the Court's consideration of the transcripts of Doctors Antoniades, Khanna, and Mayer, nor did it object to additional material concerning their testimony for defendant's third trial. ECF No. 252 at 3. It did, however, object to this Court's consideration of any of the additional materials not directly relevant to the central issue of defendant's motion. *Id.*

## II. LEGAL STANDARD

### A. Section 2255 Motion

Pursuant to 28 U.S.C. § 2255, a prisoner may collaterally attack an otherwise final sentence if it was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ." 28 U.S.C. § 2255(a). Under such a motion, a prisoner may ask a court to vacate, set aside, or correct the sentence. *Id.* If the sentence is found by the court to deny or infringe upon a prisoner's constitutional rights such

that the judgment is "vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," a court shall grant a hearing. *Id.*

Under § 2255, the petitioner bears the burden of proof, and must demonstrate by a preponderance of the evidence that he is entitled to relief. *United States v. Pollard*, 602 F. Supp. 2d 165, 168 (D.D.C. 2009). "Relief under § 2255 is an extraordinary remedy in light of society's legitimate interest in the finality of judgments." *United States v. Zakas*, 793 F. Supp. 2d 77, 80 (D.D.C. 2011). A petitioner asserting a § 2255 motion must therefore "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

### B. Ineffective Assistance of Counsel

Coughlin claims ineffective assistance of counsel as to his trial counsel—a claim he did not raise on direct appeal. Ordinarily, claims not raised on direct appeal may not be raised as part of a collateral attack on the sentence unless the petitioner shows either: (1) cause for failing to raise the issue and prejudice as a result of the alleged constitutional violation, or (2) actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Ineffective assistance of counsel claims, however, are not subject to this procedural default, and petitioners asserting such claims need not show cause and prejudice for having failed to raise the issue on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

An ineffective assistance of counsel claim is comprised of two elements: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defendant." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

Deficiency of performance is established by demonstrating "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.* More specifically, the defendant must show that his counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. A court reviewing the actions of counsel at trial must "indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner "must show that counsel's actions were not supported by a reasonable strategy." *Massaro*, 538 U.S. at 505.

Prejudice is established by demonstrating that as a result of counsel's errors, the petitioner was deprived of a fair trial. *Strickland*, 466 U.S. at 687. This requires the defendant to show that "but for trial counsel's error[,] there is a reasonable probability that the defendant would not have been found guilty." *Id.* at 694.

### III. DISCUSSION

#### A. Defendant's Motion to Expand the Record

The Court has reviewed all of the trial transcripts and extra-record materials submitted by defendant in relation to his Motion to Expand (ECF Nos. 247-1 to 247-10). In deciding this § 2255 motion, the Court considered only those materials relevant to Doctors Mayer, Khanna, and Antoniades' testimony from the first trial, as well as those detailing the consideration of their testimony before and during defendant's third trial. The Court finds that all other materials are irrelevant to its consideration of defendant's § 2255 motion.

## B. Deficiency of Counsel's Performance

With regard to his third trial, defendant argues that trial counsel's "failure to even consider" expert medical witnesses to counter the government's seven expert medical witnesses rendered his efforts constitutionally deficient. ECF No. 206 at 28; ECF No. 221 at 38. He contends that "it was incumbent upon [his] attorneys to prepare for another trial with complex medical issues and complicated testimony." ECF No. 206 at 20; ECF No. 221 at 33. In particular, he argues that counsel's failure to request Criminal Justice Act ("CJA") funds to provide for the testimony was deficient given that he was unable to pay for the expert witnesses. ECF No. 221 at 33.

However, defendant has contradicted the central premise of his motion by detailing how defense counsel seriously considered calling Doctor Mayer as a witness in his third trial. His reply to the government's opposition describes how defense counsel met for a "strategy session" shortly before the beginning of the third trial and discussed using the three doctors from the first trial at that session. ECF No. 247 at 9-10. Following this session, counsel included the three experts on a list of potential witnesses for the third trial. ECF No. 247-3 at 51-55. Throughout the course of the third trial, defendant states, counsel "maintained ongoing communication with Dr. Mayer to deconflict his personal schedule." ECF No. 247 at 12. Therefore, the defendant's own pleadings make clear that his counsel did not "[fail] to even consider" calling expert witnesses. ECF No. 206 at 28; ECF No. 221 at 38.

In any event, defendant fails to demonstrate how the decision to ultimately not request CJA funds and call the medical experts as testifying witnesses "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. His argument centers on the fact that defense counsel had called medical experts to testify during his first trial, in which he was acquitted on several counts. As he states in his reply to the government's opposition to his amended motion, "defense

[counsel] saw the effectiveness of defense expert witnesses in Trial 1 in obtaining acquittals." ECF No. 247 at 15.

In contrast to defendant's characterization, his trial counsel John Bourgeois' declaration states that, after interviewing members of the jury from the first trial, he gathered that they found the volume of medical testimony presented to be excessive, "distracting," and "wholly unnecessary." ECF No. 241-1 ¶ 6. His declaration also states that "the jurors expressed that they were not impressed – or persuaded – by either side's medical expert testimony. *Id.* Bourgeois also declared that the defense team's familiarity with the government's medical experts would allow them to rebut their case through cross-examination without the "side-show" of conflicting testimony generated at the first trial. *Id.* ¶ 11, 12. Specifically, they worried about presenting "an inherent contradiction between having doctors testify that [defendant's] injuries did not impair his ability to engage in athletic pursuits while [defendant] was, at the same time contending that he could not perform basic household chores." *Id.* ¶ 11.

Even if the effectiveness of the experts' testimony was as obvious as defendant contends, the decision to not present that testimony is not a "fundamental" one for which he maintains the "ultimate authority." *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (providing examples of fundamental decisions regarding a defendant's case, such as "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal"); ABA Standards of Criminal Justice: Defense Functions 5.2(a)-(b). As a result, defendant had no constitutional right to compel counsel to press for expert medical testimony, if counsel, "as a matter of professional judgment, decided not to present those points." *Jones*, 463 U.S. at 751.

Not only did counsel exercise his professional judgment by deciding not to present the expert medical testimony, he discussed the matter with defendant after cross-examining the

government's medical experts and arrived at a collective decision to not call Dr. Mayer or any of the other doctors from the first trial. ECF No. 241-1 ¶ 13. A mid-trial e-mail correspondence between defendant and his counsel discussing additional testimony reveals that defendant acceded to this strategic decision. *See* ECF No. 252 at 18-20 (detailing a conversation between counsel and defendant about paring down witness testimony, in which defendant refers to conceding or "giving" Dr. Mayer).

After considering the totality of the circumstances, the Court finds that counsel's performance "[fell] within the wide range of reasonable professional assistance" and was, therefore, not deficient. *Strickland*, 466 U.S. at 689.

### C. Prejudice Generated by Counsel's Performance

Given that defendant has failed to satisfy the burden of proving that counsel's decision to not call medical experts and/or request CJA funds to facilitate their testimony rose to the level of deficient performance, the question of prejudice does not need to be addressed. *Id.* at 700. Nevertheless, the Court finds that counsel's decision did not serve to prejudice defendant. In formulating its theory for the third trial, the government conceded that defendant did sustain an injury on September 11, 2001, as Doctors Mayer, Antoniades, and Khanna testified during the first trial. Given this concession, the Court does not see any way in which presenting this testimony again would have served to undermine the government's evidence concerning the numerous misrepresentations defendant made during his VCF hearing concerning his economic loss. *See* ECF No. 241 at 16-17 (detailing the degree to which the check carbons that defendant submitted to the VCF did not match the actual checks that passed through his bank account). The Court also finds that defendant has failed to demonstrate that counsel's decision to not call the medical experts from the first trial, and instead to cross-examine the government's medical witnesses, allows for a

"reasonable probability that the defendant would not have been found guilty" if not for that decision. *Strickland*, 466 U.S. at 694.

### D. Evidentiary Hearing

"A judge need not conduct an evidentiary hearing before denying a petition for relief under § 2255 when the 'motion and the files and records of the case conclusively show that prisoner is entitled to no relief.'" *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting 28 U.S.C. § 2255). The Court finds that the record conclusively show that defendant is not entitled to relief, and therefore, will dismiss the motion without holding an evidentiary hearing.

## IV. CONCLUSION

For the aforementioned reasons, defendant has failed to establish that his counsel's performance was constitutionally deficient or prejudicial, as required for a finding of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 700. Defendants' Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is, therefore, **DENIED**. Defendant's Motion to Expand the Record is **GRANTED** in part and **DENIED** in part.

A separate order consistent with this opinion shall issue this date.

Date: August 7, 2018

Royce C. Lamberth
United States District Judge